SHERLOCK, Respondent, v. DINNEEN et al., Appellants.

(176 N. W. 519.)

(File No. 4594.   Opinion filed February 19, 1920.)

1.   Damages—Janitor's Injury From Trap Door, Infection to Finger, Physicians' Evidence Re—Proximate Cause.

Where, in a suit for damages for injury to plaintiff's finger resulting from its being caught in a trap door leading to basement of defendants' building, during plaintiff's employment as janitor, the evidence showed that after immediate cleansing and dressing of the wound by a physician, plaintiff resumed work for about twelve days, that about eighteen days after the injury infection developed causing plaintiff pain and suffering, a permanent cure not being effected until about nine months after injury, resulting in a permanently stiffened finger, plaintiff's physician testifying that if infection deveolped from a wound it usually came within three to five days after injury, defendants' physicians testifying that this infection arose from some cause other than such injury, one of them testifying that infection might arise from twelve to one hundred hours after injury, but if arising later it was improbable the injury was the cause thereof, the other testifying infection would more aptly come from a later cause if it arose eight or ten days after injury, held, if the infection was attributable to the injury but arose from later cause, the primary injury was not the proximate cause of the results occurring from said infection.

2.   Damages—Injury to Finger, Infection, Whether Injury or Continuous Work the Cause, Refused Instruction Re.

In a suit for damages for injury to plaintiff's finger, held, in view of the evidence and the probability that germs got into the wound from continuance of plaintiff at his janitor work after the injury, trial court should not have refused a requested instruction that plaintiff must satisfy jury by preponderance of evidence that the infection was caused by the primary injury, and not from a secondary infection from any cause subsequent

to date of injury, and that if jury were not satisfied that such preponderance of evidence showed the infection developed from the injury and not from any subsequent cause, plaintiff could not recover.

3. **Same—Instruction That Expert Opinions "Merely Advisory, Not Binding Jury"—Prejudicial Error Though No Exception.**

It was also prejudicial error for court to instruct that the opinions of witnesses as experts are merely advisory and not binding on jury; and while such instruction was not excepted to, yet in view of its being given and of refusal to give the requested instruction, coupled with facts in evidence, such instruction was prejudicial error.

4. **Evidence—Damages for Injury to Janitor From Trap Door—Relevant Testimony of Former Janitor Re, Admissibility.**

In a suit for damages for injury to palintiff's finger, caught in trap door of defendants' building while plaintiff was janitor, testimony of a former janitor and who was janitor when the counter-balance to the door in question was affixed, was material, and relevant, and should have been received.

5. **Trials—New Trial—Damages for Personal Injury—Plaintiff's Conversation With Jurors, Showing Them Trap Door—Affidavits Re New Trial—Refusing New Trial, Error—Confidence In Verdicts, Courts Protection Of.**

Where, in a suit for damages for injury to plaintiff's finger from being caught in a basement trap door while he was janitor, plaintiff upon cross-examination testified that last night after adjournment he didn't have anything to do with the door, that he stood there when it was raised, that he didn't know as he was then talking to jurymen, that he and Mr. R. were there talking; and on motion for new trial affidavits of defendant and his attorney stated that during the trial, on coming from courthouse they saw plaintiff near the trap door in conversation with two of the jurors and pointing to the door, that plaintiff saw affiant and immediately walked away; plaintiff's counter affidavit specifically denying defendants' affidavits, and stating he had no conversotion with or talked with any of the jurors before or during the trial relative to the case, and that plaintiff and his attorney as such affiants were absolutely mistaken, etc., **held**, that it clearly appears by plaintiff's admissions on witness stand, that witness R. and two jurors were present at place of injury, that the door was raised and that plaintiff was talking to R. in presence of the jurors; and trial court erred in refusing new trial; that the confidence of litigants and public in the integrity of verdicts must nct thus be allowed to be diminished.

6.  **Damages—Personal Injury—Counsel's Remarks to Jury, Affidavits Re Amounts Voted For, Plaintiff's Permanent Injury, Compared With Excessive Verdict.**

> In a suit for damages for personal injury, Supreme Court, in considering whether verdict was excessive and rendered under influence of passion or prejudice, find basis for such prejudice in certain remarks by plaintiff's counsel to jury, and from jurors' affidavits showing wide divergence in amounts voted for by jurors, and that plaintiff, a janitor, having no trade, his permanent injury being a stiffened finger; that from receiving $80 per month when injured it appeared that at time of trial over a year later he was receiving $70; in the light of all of which verdict for $2541.00 was grossly excessive.

Appeal from Circuit Court, Beadle County.  Hon. ALVA E. TAYLOR, Judge.

Action by John Sherlock against John Maurice Dinneen and others, to recover damages for personal injury.  From a verdict for plaintiff, and from an order denying a new trial, defendants appeal.  Reversed.

*A. W. Wilmarth,* for Appellant.

*O. S. Hagen,* and *Kelley & Byrnes.* for Respondent.

(5)  To point five, Appellant cited:  Godfrey v. Dalquist, 27 S. D. 373; People v. Reges et al., 5 Calif. 347; State v. Chapman, 1 S. D. 414.

(6)  To point six, Respondent cited:  Gray v. Commutation, 89 N. W. R., p. 322.

GATES, J.  Action for personal injuries.  Verdict and judgment for plaintiff for $2,541.67 and costs.  Defendants appeal from an order denying new trial, the appeal from the judgment not having been taken within the time allowed by law.

Plaintiff, a man 52 years of age, was in the employ of defendants, as janitor of the Dinneen block, a business block in the city of Huron, and had been for about seven months prior to the injury.  He also did janitor work for the Elks' building.  In the sidewalk in front of the Dinneen block there was an iron trapdoor, opening into a stairway to the basement, where was situated the heating plant.  Attached to the door was a large heavy stone as a counterbalance, the purpose of which was to ease the weight in lifting the door from the sidewalk, and to retard its progress in going down.  The stone was attached by means of an iron band around the long way of

the stone. In the early morning of January 22, 1917, plaintiff opened the trapdoor as usual, but for some reason the door came down upon him as he went down the stairway, and rendered him temporarily unconscious. Plaintiff testified that he found the stone had slipped out from the iron band. One finger of his right hand was pinched severely, resulting in partially loosening the nail from its bed. He promptly secured the services of a physician, who cleansed and dressed the wound, and plaintiff resumed his work until about February 3. After that he superintended the work, having a subemploye. He had the wound treated every day for three or four days; after that, every other day until February 9. On the last-named date, or 18 days after the injury, infection developed, which caused plaintiff much pain and suffering, loss of time, and medical expense. A permanent cure was not effected until the following November, but the result was a permanently stiff finger. The undisputed evidence is that plaintiff never complained to defendants in regard to the accident. One of the defendants who had the management of the building testified that he saw plaintiff with his finger bound up, and asked him what the matter was, and that plaintiff said he got it pinched in the door; that about a week after the accident he asked plaintiff how his finger was, and plaintiff said, "Getting along fine." This testimony is undisputed. The undisputed testimony also shows that the same defendant was one of the managers of the Elks' building, and that on February 9, he discharged plaintiff from both jobs for incompetence. The first knowledge defendants had of any complaint about the injury was after this time, when they received a letter from plaintiff's attorney, Mr. Kelley.

[1, 2] Plaintiff's physician testified that if infection developed from a wound, it usually came within three to five days after the injury. The defendant submitted the testimony of two physicians, who testified that in their opinion the infection arose from some cause other than the injury, and at a later date. One of them testified that infection might arise from 12 to 100 hours after the injury; but, if it arose later than that, it was improbable that the injury was the cause of the infection. The other testified that infection would be more apt to be from a later cause, if it arose eight or ten days after

the injury.  Here the infection did not arise until 18 days after the injury.  If the infection was not attributable to the injury, but arose from some later cause, the primary injury was not the proximate cause of the serious results occurring from the infection.  In view of the evidence and the probability that germs got into the wound by reason of the continuance of the plaintiff at his janitor work until February 3, the following instruction to the jury, requested by defendants, should have been given:

"Relative to the infection that developed from the injury to the plaintiff's finger, you are instructed that the plaintiff must satisfy you by a preponderance of the evidence that this infection was caused by the primary injury on January 22, 1917, and not from any secondary infection from any cause whatever subsequent to January 22, 1917, and if you are not satisfied that a preponderance of the evidence shows that this infection actually developed from the injury of January 22, 1917, and not from any cause subsequent thereto, the plaintiff cannot recover for any pain or suffering or injury resulting from such infection."

[3]  The court not only refused that instruction, but told the jury that: "The opinions of witnesses as experts are merely advisory, and not binding on the jury."  This, however, was not excepted to, but in view of the giving of that instruction and the refusal of the other, coupled with the facts in the case, we think it clearly apparent that prejudice resulted from the refusal of the requested instruction.

[4]  Testimony of a former janitor, and who was janitor when the counterbalance was affixed, was excluded.  It was material and relevant to the issues, and should have been received.

Upon the last day of the trial, the following proceedings occurred, the plaintiff being examined by defendants' counsel:

"Q.  Last night after this case adjourned, were you not in communication with jurymen, showing them this door where this injury was claimed to have occurred?  A.  I didn't have nothing to do with the door.  I stood there when the door was raised.

"Q.  You were talking to them?  A.  I don't know as I was talking to them.  Mr. Bowe and I were talking there.

"Q. You were talking to them, weren't you, and you showed them the door, too, didn't you?"

An objection and a court ruling prevented further examination at that time. Upon the motion for new trial the affidavits of E. B. Dinneen and A. W. Wilmarth stated, in substance, as follows:

"That during the trial of this case, on coming from the courthouse, they saw near the trapdoor in the sidewalk, where the accident occurred, the plaintiff, in conversation with two of the jurors, and pointing to the door and the opening. That plaintiff saw these affiants, and immediately turned and walked away from the door and the jurors, and that subsequent to this time the case was argued and the court charged the jury."

The affidavit of plaintiff, after referring to the above affidavits was as follows:

"That he denies the statements contained therein, and especially denies that deponents therein saw the plaintiff in conversation with two of the jurors, or pointing to the trapdoor in question, and that plaintiff looked around and saw these affiants coming, and immediately turned and walked away from the door and the jurors with whom he was conversing. Deponent further alleges that he had no conversation with any of the jurors, either before or during the trial of said action, or was in any way associated with them, or any of them, or in any way talked with them, either in relation to this case or otherwise. And that deponents, one of whom is a defendant in said action, and the other, who is the attorney for the defendant, are absolutely mistaken in making the declarations contained in said affidavit relative to this deponent having any conversation with any juror whatever during the trial of said action."

[5] By his own admissions while on the witness stand, it clearly appears that plaintiff, the witness Bowe, and two jurors were present at the place of injury; that the door was raised, and that plaintiff was talking to the witness Bowe in the presence of the two jurors. This was not in any way denied or qualified in plaintiff's affidavit. The trial court should have promptly granted a new trial for this reason if for no other. McDaniels v. McDaniels, 40 Vt. 363, 94 Am. Dec. 408. The

confidence of litigants and the public in the integrity of verdicts must not be allowed to be diminished, as it would be if this verdict should be permitted to stand.

[6] Finally, we think the verdict was grossly excessive and unconscionable, and must have been granted under the influence of passion or prejudice. We find a basis from which such prejudice probably arose in certain remarks to the jury, made by counsel for plaintiff, to which exception was taken, and from affidavits of jurors, taken for another purpose, in which it appeared that the lowest amount any juror voted for was $1,800, while some of them voted for $5,000. Plaintiff was a man 52 years of age. He had learned no trade. His capabilities were limited to ordinary manual labor. His permanent injury was a stiffened finger. His physician's bill was $162. Even if all of this bill and all of his pain and suffering and his partial loss of wages from February to November and the stiffened finger were caused solely by the injury, yet the amount of the verdict was grossly excessive. At the time of injury plaintiff was receiving $80 per month from the two sources. At the time of trial, 14 months after the injury, he was serving as janitor at a school building, and was receiving $70 a month. It does not appear from the evidence that plaintiff is barred from effectively doing such work by reason of the stiffened finger.

The order denying a new trial is reversed.